UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENEFIT SYSTEMS & SERVICES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRAVELERS CASUALTY AND ) <br> SURETY COMPANY OF AMERICA, ) <br> ) <br> Defendant. ) | No. 07 C 3922 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Benefit Systems & Services, Inc. ("BSSI") brought suit against Defendant Travelers Casualty and Surety Company of America ("Travelers"), seeking a declaratory judgment that Travelers is obligated to defend and indemnify BSSI against two claims made against it in Illinois state court. BSSI and Travelers have both moved for summary judgment on BSSI's Complaint.

### BACKGROUND

The following background is taken from Defendant's Local Rule 56.1(a)(3) Statement of Material Facts ("Def.'s 56.1(a)(3)"). BSSI is a corporation organized under the laws of Illinois with its principal place of business in Westmont, Illinois. (Def.'s 56.1(a)(3), ¶ 1.) Travelers is a corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. (Def.'s 56.1(a), at ¶ 2.)

Travelers issued a policy ("the Policy") to BSSI. (Def.'s 56.1(a), at ¶ 5.) The Policy is a claims-made policy, which covers claims first made during the policy period of August 4, 2005 to August 4, 2006. (Def.'s 56.1(a), at ¶¶ 4, 5.) The Policy provides that "[a] Claim shall be deemed to have been first made on the date of service upon or receipt of notice by any Insured of the written demand or proceedings, whichever occurs earlier." (Def.'s 56.1(a), at ¶ 8.)

The Policy defines "Claim" as "any civil or administrative action, suit, proceeding or written demand by any person or entity seeking to hold the Insured responsible for Loss as a result of a Wrongful Act actually or allegedly committed by the Insured or by any other person for whose Wrongful Acts the Insured is legally responsible." (Def.'s 56.1(a), at ¶ 10.) The Policy defines "Wrongful Act" to mean "any actual or alleged negligent act, misstatement, misleading statement, error or omission in the rendering or failure to render Professional Services." (Def.'s 56.1(a), at ¶ 13.)

The Policy defines "Related Claims" to mean "all Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events." (Def.'s 56.1(a), at ¶ 14.) The Policy provides: "All Related Claims are a single Claim for purposes of all applicable Liability Coverage Parts, and all Related Claims shall be deemed to have been made at the time the first such Related Claim was made, regardless of whether such date is before or during the Policy Period." (Def.'s 56.1(a), at ¶ 16.)

On or about February 24, 2006, the University of Chicago Hospital ("UCH") and the University of Chicago d/b/a The University of Chicago Practice Plan (collectively, the "University Parties") filed a complaint against BSSI in Illinois state court (the "University

Complaint"). (Def.'s 56.1(a), at ¶ 20.) The University Complaint alleged that the University Parties are comprised of a group of hospitals and a group of physicians who are employees, faculty members, and practicing physicians at the hospitals. (Def.'s 56.1(a), at ¶ 21.)

The University Complaint alleged that BSSI provides group benefit plan management and administration services for employer health benefit plans. (Def.'s 56.1(a), at ¶ 22.) It alleged that on or about February 1, 2001, the University of Chicago and BSSI entered into a letter of agreement (the "Letter of Agreement") pursuant to which BSSI "agreed to provide administrative services and arrange for payments to the University [of Chicago] for inpatient, outpatient, and consultative health care services provided to persons covered under BSSI's contracted payor health benefit plans." (Def.'s 56.1(a), at ¶¶ 23, 24.) Under the Letter of Agreement, BSSI agreed to determine the eligibility of such participants to plan coverage, calculate the amount of benefits payable under the plan, and arrange for payment of the University's fees for services to plan participants in exchange for the University's promise to discount its fees to participants in employee benefit plans administered by BSSI. (Def.'s 56.1(a), at ¶ 24.)

The University Complaint alleged that "sometime prior to July 1, 2005, BSSI entered into a contract with Plunkett Furniture Co. ("Plunkett") to provide management and administration services for Plunkett's employer health benefit plan, which provided health benefits to Plunkett's employees." (Def.'s 56.1(a), at ¶ 25.) The University Complaint alleged that BSSI was obligated to pay the University of Chicago for medical services provided to persons covered under Plunkett's group health benefit plan. (Def.'s 56.1(a), at ¶ 26.) It alleged that the University Parties provided extensive medical services to certain infant twins, whose parents were covered persons under the Plunkett employer health benefits plan as of July 1, 2005.

3

(Def.'s 56.1(a), at ¶ 27.) It further alleged that, as of July 1, 2005, BSSI became obligated, under the Letter of Agreement, to arrange for payment of claims submitted by the University of Chicago for these medical services. (Def.'s 56.1(a), at ¶ 28.) The University Complaint alleged that, on September 27, 2005, the University of Chicago, per the Letter of Agreement, submitted its claims to BSSI for medical services rendered to the twins. (Def.'s 56.1(a), at ¶ 29.)

The University Complaint alleged that BSSI breached its contract with the University of Chicago by failing and refusing to pay the amount the University of Chicago billed BSSI per the Letter of Agreement. (Def.'s 56.1(a), at ¶ 30.) It alleged that "[a]s a result of BSSI's breach of the Contract," the University Parties had "suffered more than $1 million in damages" since they "had not been paid for the extensive services they performed to sustain the twins' lives." (Def.'s 56.1(a), at ¶ 31.) On December 10, 2007, the Illinois court granted the University of Chicago's summary judgment motion, finding that the Letter of Agreement was unambiguous and that there was no genuine issue of material fact regarding BSSI's contractual obligation to pay the University of Chicago for the amounts billed for services rendered to the twins. (Def.'s 56.1(a), at ¶ 32.)

On October 20, 2006, BSSI filed a third-party complaint against Plunkett, seeking indemnity for its potential liability to the University of Chicago. (Def.'s 56.1(a), at ¶ 33.) On January 19, 2007, Plunkett filed a counterclaim against the University of Chicago and BSSI (the "Plunkett Counterclaim"), as well as a third party complaint against other parties. (Def.'s 56.1(a), at ¶ 34.) The Plunkett Counterclaim, as amended, alleged that Plunkett entered into a Service Agreement with BSSI on September 1, 2004, which set forth the duties and responsibilities of Plunkett and BSSI with respect to the operation and administration of

Plunkett's Employee Health Benefit Plan Document. (Def.'s 56.1(a), at ¶ 36.) The Plunkett Counterclaim alleged that, pursuant to the Service Agreement, BSSI was to act as the third-party administrator for the Employee Benefit Plan and provide benefit administration, claims processing and payment, and other ancillary services related to the plan. (Def.'s 56.1(a), at ¶ 37.)

The Plunkett Counterclaim alleged, in part, that BSSI breached the Service Agreement by failing to investigate and communicate with the twins' parents regarding enrollment in Plunkett's Plan, failing to inform Plunkett and others of certain information, including issues of creditable coverage certificates for the twins and the twins' condition and hospitalization, despite being contacted on several occasions by the twins' mother with respect to those issues. (Def.'s 56.1(a), at ¶ 40.) It alleged that, as a result of BSSI's breach, Plunkett was unaware of the twins' condition or their hospitalization and was unable to report, process or pay any of the twins' claims before coverage under the policy issued by Combined Insurance Company of America ("Combined") expired. (Def.'s 56.1(a), at ¶ 41.)

Plunkett first made a claim against BSSI in its letter dated October 25, 2006. (Def.'s 56.1(a), at ¶ 44.) Travelers disclaimed coverage under the Policy for the University Complaint and the Plunkett Counterclaim. (Def.'s 56.1(a), at ¶ 43.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

### *BSSI's Non-Compliance with Local Rule 56.1*

Local Rule 56.1 provides that a party moving for summary judgment shall serve and file: "(3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law . . . ." L.R. 56.1(a)(3). The

rule further provides: "The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a)(3).

BSSI failed to provide a statement of material facts, as was required by Local Rule 56.1. Instead, BSSI set out its factual allegations in thirty-four paragraphs within the body of its Amended Motion for Summary Judgment. This method of presenting the material facts of the case is not in compliance with the rule. More importantly, BSSI failed to comply with Local Rule 56.1's requirement that each paragraph include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a)(3). Without such information, the Court cannot determine what evidence BSSI can offer in support of its proposed material facts.

Local Rule 56.1 provides that failure to submit the statement required by Rule 56.1(a)(3) constitutes grounds for denial of the motion, and several courts have denied summary judgment motions on that basis. *See Pinto v. United States*, 228 F.Supp.2d 908, 910 (N.D. Ill. 2002) (denying motion for summary judgment when movant failed to provide citations to the record in his statement of facts); *Reynolds v. Claridge Hotel, Inc.*, 2003 WL 22299026 at *1 (N.D. Ill. 2003) (denying motion for summary judgment because movant had not submitted a statement of material facts); *Anthony Marano Co. v. Glass*, 2007 WL 257630 at *4 (N.D. Ill. 2007) (same); *see also Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir.2004) (district court is entitled to strict compliance with Local Rule 56.1).

BSSI argues in its reply brief that it has complied with Local Rule 56.1. However, in quoting the rule, it conveniently omits one of the requirements with which it has not complied – that each paragraph provide citations to the record. The Court is entitled to strict compliance with the rule, and BSSI has fallen short of that in several respects. BSSI's motion for summary judgment is, therefore, denied.

In responding to Traveler's motion for summary judgment, BSSI has also failed to comply with Local Rule 56.1(b)(3)(B), which requires "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon . . . ." Rather than raising specific objections to any fact asserted in Traveler's statement of material facts, BSSI, in several instances, asserts conditional blanket denials. For example, in response to Traveler's statement of material facts paragraphs thirty-six through forty-two, BSSI states "The plaintiff admits to the statements contained in Paragraphs 36 through 42 to the extent they are consistent with Exhibit G to the Second Amended Complaint filed by the plaintiff herein, but denies any statements that are inconsistent therewith." Under Local Rule 56.1, it is the duty of the party opposing summary judgment to determine which factual assertions it disputes and those that it does not. It is manifestly not the job of the district court to sort through the factual record to determine which of the movant's factual assertions the opposing party should dispute. As BSSI has either admitted or asserted similar, nonspecific denials to Traveler's entire statement of material facts, the Court will consider all of Traveler's material facts to be undisputed.

## Traveler's Motion for Summary Judgment

Travelers has moved for summary judgment on both counts of BSSI's Complaint. Count I seeks a declaratory judgment that Travelers is obligated to defend and indemnify BSSI in the suit brought against BSSI by the University Parties; Count II seeks the same relief with respect to the Plunkett Counterclaim.

Travelers asserts that, under the Policy, it has no duty to defend BSSI for the cause of action asserted in the University Complaint. In determining whether an insurer has a duty to defend, a court must compare the allegations of the underlying complaint to the relevant coverage provisions of the policy. *State Farm Fire and Cas. Co. v. Tillerson*, 334 Ill. App.3d 404, 407 (5th Dist. 2002) (*Tillerson*); *American Family Mut. Ins. Co. v. Roth*, 381 Ill. App.3d 760, 764 (1st Dist. 2008) (*Roth*). A court may also consider "true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage." *Tillerson*, 334 Ill. App.3d at 407 (internal quotations omitted). "The allegations in the underlying complaint must be liberally construed in favor of the insured." *Roth*, 381 Ill. App.3d at 764 (quoting *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill.2d 90, 125 (1992)).

Travelers argues that the University Complaint does not allege a Wrongful Act, as that term is defined in the Policy. Under the Policy, a Wrongful Act is defined as "any actual or alleged negligent act, misstatement, misleading statement, error or omission in the rendering or failure to render Professional Services." Travelers argues that under Illinois law, the word "negligent," as used in this context, modifies each of the several terms that it precedes, such that only negligent acts, negligent misstatements, negligent misleading statements, etc., are covered

9

under the Policy. Travelers argues that under Illinois law, a breach of contractual obligations, such as the breach alleged in the University Complaint, is not a negligent act within the meaning of a liability policy. Thus, the breach alleged is not a Wrongful Act.

BSSI disputes Travelers' interpretation of the scope of the word "negligent" in the Policy. BSSI argues that "negligent" modifies only "acts" and that the Policy covers misstatements, misleading statements, errors and omissions so long as they were not intentional. BSSI argues that if the Policy was intended to have the meaning advanced by Travelers', "negligent" would appear before every word in the series rather than just "acts." BSSI's interpretation is not convincing. The Court agrees with the reasoning of a court that previously addressed this same question that "[i]t would be illogical for an endorsement to limit coverage to negligent acts, but to provide coverage for intentional omissions or errors." *TIG Ins. Co. v. Joe Rizza Lincoln-Mercury, Inc.*, 2002 WL 406982 at *9 (N.D. Ill. 2002); *see also Golf Course Superintendents Ass'n of America v. Underwriters at Lloyd's, London*, 761 F.Supp. 1485, 1490 (D. Kan. 1991) ("It would be self-defeating to limit the definition of 'wrongful act' to negligent acts, but at the same time cover intentional errors or omissions.") Thus, under the Policy, a Wrongful Act must be negligent, no matter whether it is called an act, misstatement, false statement, omission or error.

The parties next dispute whether a breach of contractual obligations is a negligent act within the meaning of a liability policy. In support of its position, Travelers cites *Baylor Heating & Air Conditioning, Inc. v. Federated Mut. Ins. Co.*, 987 F.2d 415 (7th Cir. 1993) (*Baylor*). In *Baylor*, the court addressed the question of whether an insurance contract covering negligent acts was triggered by the insured's breach of contract. *Baylor*, 987 F.2d at 420. The insured argued

10

that its erroneous belief that it was not obligated to make payments under the contract and its resulting nonpayment was the result of negligence and was therefore covered under the policy. *Baylor*, 987 F.2d at 419. The court rejected this argument, stating "[t]here is a well-recognized line of demarcation between negligent acts and breaches of contract." *Baylor*, 987 F.2d at 420. *See also First Southern Ins. Co. v. Jim Lynch Enterprises, Inc.*, 932 F.2d 717, 719 (8th Cir. 1991) (holding that a policy covering acts of negligence did not extend to a breach of contract).

BSSI attempts to refute Travelers' contention that under Illinois law, a breach of contractual obligations is not a negligent act within the meaning of a liability policy with an Illinois Supreme Court case, *Illinois Light Company v. Home Insurance Company*, 213 Ill.2d 141 (2004) (*Illinois Light*). *Illinois Light* is distinguishable, however, in that the policies at issue in that case were not similar to the policy under consideration in this case.

Thus, the breach of contract alleged in the University Complaint cannot be considered an act of negligence. Therefore, it is not a Wrongful Act covered by the Policy.

The remaining question is whether the Plunkett Counterclaim is covered under the Policy. It is undisputed that Plunkett filed its initial counterclaim against BSSI on January 19, 2007. This was outside policy period. Therefore, the Plunkett Counterclaim is not covered unless it was related to a claim that was made during the policy period. BSSI argues that the Plunkett Counterclaim was related to the University Complaint, which was made during the policy period. As noted above, the Policy defines "Related Claims" to mean "all Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events." However, the Policy also provides: "All Related Claims are a single Claim for purposes of all applicable Liability

11

Coverage Parts, and all Related Claims shall be deemed to have been made at the time the first such Related Claim was made, regardless of whether such date is before or during the Policy Period." BSSI's argument fails, however, because the University Complaint was not a covered claim under the Policy. Thus, the Plunkett Counterclaim cannot be a related claim because there was no earlier claim to which it could relate back.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

Dated: April 22, 2009

JOHN W. DARRAH
United States District Court Judge